IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 24-23-M-DWM |
| Plaintiff, | |
| vs. | OPINION and ORDER |
| JAMES VERNON DAY, JR., | |
| Defendant. | |

Defendant James Vernon Day, Jr. is charged with prohibited person in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d). (Doc. 1.) The charges arise out of a search of Day's property in Sanders County, Montana, on December 19, 2023. Day seeks to suppress the firearms seized from his shop and residence. (Doc. 19.) A suppression hearing was held August 5, 2024. The government called one witness, Sanders County Sheriff's Deputy Craig McCarthy. Based on the evidence presented at the August 5 hearing, the documentary record, and the parties' oral and written arguments, Day's motion is denied.

## BACKGROUND

The factual background is taken from McCarthy's testimony; exhibits admitted at the August 5 hearing; the December 18 and December 19, 2023 search

warrant applications, (Docs. 19-1, 19-2); filings from Day's state case, (Doc. 19-3); state property records, (Docs. 24-1 to 24-5); and body camera videos from Deputy McCarthy and Sanders County Detective Ethan Harvey,[1] (*see* Doc. 21 (notice of conventional filing)).  Based on the testimony at the August 5 hearing, the Court finds Deputy McCarthy credible.

## I.    The Stolen Truck Warrant

In March 2023, a white Dodge ram truck belonging to a recently deceased man was reported stolen from a property located in Thompson Falls, Montana. (Doc. 19-1 at 2.)  While investigating an unrelated incident in July 2023, law enforcement learned that the truck was likely stolen by the owner's grandson and sold to an "older guy" named "Jimmy or Johnny" who planned to "remove the motor and sell it off in pieces."  (*Id.*)  Based on the investigators' familiarity with Day, they matched the description of where the truck was taken to Day's property. (*Id.*)  On December 18, 2023, Deputy McCarthy visited the property in an attempt to serve civil paperwork on Day's wife.  (*Id.* at 3.)  Although the civil paperwork at issue listed 1550 Prospect Creek Road, Day met the officers at the chain across the driveway and informed them that his residence had been readdressed as 1552

---

[1] The body camera footage is cited as "[Officer], [Ex. No.] at [Timestamp]." Although the footage is timestamped, it does not appear that the officers' cameras are set to the same time.  (*Compare* Ex. U (McCarthy footage starting at 14:44:03) *with* Ex. L (Harvey footage starting at 13:00:31).)  At the hearing, the government clarified that McCarthy's body camera was running ahead of the actual time.

Prospect Creek Road. Despite this limited contact, Deputy McCarthy was nonetheless able to observe several vehicles parked on the property, including multiple trucks with similar characteristics to the stolen truck. (*Id.*)

Later on December 18, Deputy McCarthy applied for a state search warrant for the "Real property located at 1550 Prospect Creek Road Thompson Falls MT 59873 owned by James Day Jr DOB:____1968." (*Id.* at 1.) That warrant was based on the alleged possession of stolen property and was therefore limited in scope to evidence of that offense, e.g., documentary evidence of the stolen vehicle and vehicle VIN numbers and parts. (*See id.*) As it relates to the property to be searched, the warrant stated:

> The entire real property listed as 1550 Prospect Creek Road Thompson Falls MT 59873 where a vehicle and/or vehicle parts could be located. The main residence including any and all outbuildings where vehicles and/or vehicle parts could be stored. VIN numbers, registration information, and ownership information for vehicles located at 1550 Prospect Creek Road Thompson Falls MT 59873. To include the interior of vehicles, any compartments, stowage areas, inside, outside, on top, and underneath said vehicles.

(*Id.* at 7.)

## II.   The Property

The property at issue is an 18-acre parcel located off Montana Highway 471, just southwest of Thompson Falls. The property is "off the grid," which means that all power is based on the use of a generator and solar panels. There are three primary structures on the property, two "residences" and one shop:



(Ex. 9.) As depicted above, one building, Day's mother's house, has the address

1550 Prospect Creek Road.  (*See* Doc. 19-3 at 70.)  The other residence,

undisputedly Day's residence, is denoted as an "outbuilding" on the state property

records but, as of May 2022, is separately addressed as 1552 Prospect Creek Road.

(*See id.* at 71; Doc. 24-5 (noting that assignment was made 5/31/2022).)

Consistently, there are two separate mailboxes at the driveway entrance.  (*See* Exs.
W, X.)  The one marked "1550" says "Ron and Pat Day," while the other, marked
"1552," says "Jim Day."  (*See id.*)  Notably, however, both Day and his mother,
Patricia, are listed as owners of both addresses in the state property database, and
those records indicate that there is only one "residence" on the 18-acre parcel, with
all other buildings reflected as "outbuildings."  (*See* Ex. 1, Doc. 24-1; Ex. 2, at
Doc. 24-2; Ex. 3, at Doc. 24-3.)  Finally, despite the address change, Day used
1550 Prospect Creek Road as his address for his driver's license and  vehicle
registration, (*see* Ex. 6, Doc. 24-6), and continues to do so, (*see* Ex. 10 (July 7,
2024 registration)).

## III.    The Search

Shortly after 1:00 p.m. on December 19, 2023, law enforcement—including
Deputy McCarthy and Detective Harvey—went to 1550 Prospect Creek Road to
execute the warrant.  When they arrived at the property, Detective Harvey got out
of his truck and yelled for Day to come out.  (Harvey, Ex. L at 13:03:03.)
Although Day immediately appeared, he refused to approach the officers, so they
shouted to him that they had a search warrant for the property.  (Harvey, Ex. L at
13:03:30.)  The officers approached the house addressed 1550 Prospect Creek
Road after Day's mother came out on the deck.  (Harvey, Ex. N at 13:15:30.)  Day
continued to refuse to approach, ultimately walking away from the officers and

going to his residence, which was identified in the property records as an "outbuilding" at the 1550 address.  (Harvey, Ex. N at 13:17:55.)  Prior to walking away, and prior to seeing the warrant, Day yelled to the officers that they could not go into his house "because you've got the wrong fuckin' address for one thing." (Harvey Ex. N at 13:17:57.)

The officers then spoke to Day's mother, Patricia, informing her that they were looking for a stolen vehicle and its parts.  (Harvey, Ex. N at 13:18:53; McCarthy, Ex. U at 14:55:33.)  During this conversation, both Harvey and McCarthy informed Day's mother that the search warrant was for the entire property located at 1550 Prospect Creek Road, but that they did not intend to search her residence.  (*See* Harvey, Ex. N at 13:18:53 ("We don't have any intention of going in your house."); McCarthy, Ex. U at 14:56:16 ("[Y]our house isn't included in the search warrant").)  A few minutes later, after Day's mother went back inside her house, the officers sua sponte discussed the address, restating that the "property address" for the 18-acre parcel is 1550.  (*See* Harvey, Ex. P at 13:27:41.)  McCarthy specifically clarified: "[Day] readdressed his house but the property itself is still whole."  (McCarthy, Ex. U at 15:02:55.)

For the next twenty minutes or so, the officers searched the yard.  They ultimately discovered a hood, (McCarthy, Ex. V at 15:12:43), and a completely dissembled cab, (McCarthy, Ex. V at 15:18:21), that matched the description of the

stolen truck. Although not entirely clear from the footage, Day, from a distance, pointed to where pieces of the Dodge were in the yard. (*See* McCarthy, Ex. V at 15:16:45.) The officers matched the keys from the stolen vehicle to the ignition in the cab. (McCarthy, Ex. V at 15:22:01.) At this point Deputy McCarthy returned to Day's mother's house and informed her that they had discovered the cab of the truck they were looking for and had called a tow truck. (McCarthy, Ex. E at 15:26:00.) He also said that they planned to continue to search the property for parts and asked Day's mother for a key to the shop. (McCarthy, Ex. E at 15:26:23.) Day's mother said that she did not have a shop key and that he would have to "get that from Jim." (McCarthy, Ex. E at 15:28:31.) As McCarthy's conversation with Day's mother continued regarding the background for the search warrant, she ultimately said, "well Jim's house is 1552." (McCarthy, Ex. E at 15:30:04.) In response, McCarthy replied "Yes, it's all the same property though," and that while the warrant stated 1550, it also specified an "18-acre plot of land" which "encompasses the whole property." (McCarthy, Ex. E at 15:30:06.)

The officers searched the shop and found more of the stolen truck, including its doors and interior pieces, but not the motor. (McCarthy, Ex. E at 15:32:01.) They also found in plain sight a Winchester Model 94 rifle, (McCarthy, Ex. E at 15:34:00), and parts of other guns and ammunition, (McCarthy, Ex. E at 15:37:30, 15:37:56, 15:41:36). While photographing the shop, the officers discussed the

scope of the warrant, specifically noting that "guns aren't in our warrant" and that they may need to get another warrant. (McCarthy, Ex. F at 15:48:40; *see id.* at 15:49:33 ("We should probably write a warrant then.").) During this extended conversation, one of the officers said, in reference to firearms, "I bet you he's got a shit-ton in his house, that's why he's worried," (McCarthy, Ex. F at 15:51:56), and, a bit later, Deputy McCarthy said, "I want in that fucking house," (McCarthy, Ex. F at 16:03:51).

Day reappeared outside his mother's house after the officers finished searching the shop. (McCarthy, Ex. H at 16:10:37.) Deputy McCarthy told Day that they found the truck and Day asked if he could go back to his house. (McCarthy, Ex. H at 16:11:30.) McCarthy responded, "If we go to your house, I'm going in your house and I'm searching your house." (McCarthy, Ex. H at 16:11:30.) Indeed, based on the officers' knowledge of Day's prior felonies and their discovery a firearm on the premises, there was a real officer safety concern in allowing Day to return to his residence unaccompanied by law enforcement. According to Deputy McCarthy's testimony, Day said that he did not consent to a search of his home. Day was handcuffed, (McCarthy, Ex. H at 16:22:24), and transported to the Sanders County Jail.

Although the officers decided to apply for a separate warrant for the firearms, (McCarthy, Ex. H at 16:25:16), prior to doing so they entered Day's

residence, i.e., the "outbuilding" in the property records, to search for stolen vehicle parts and documents related to the stolen vehicle, (*see* Doc. 24 at 8 (the government's assessment of the entry)).  During that search, they observed approximately 25 to 30 firearms in plain view.  (*See* Doc. 19-2 at 2.)  While there is no body camera footage of this initial entry, Deputy McCarthy's body camera eventually turns on, showing numerous firearms in plain view throughout the residence.  (*See* McCarthy, Exs. J and K.)  The interior of the building as shown on the video is very dark and the officers had to use a flashlight to see anything.  There is also a regular "clicking" sound, as the night vision on the body camera triggers on and off.

## IV.    The Firearms Warrant

At 5:04 p.m. on that same day, after the officers had already entered Day's house to look for stolen vehicle parts and documentation, Deputy McCarthy applied for a firearms search warrant.  (Doc. 19-2 at 3.)  Despite the officers having been told that Day's residence had a different address of *1552* Prospect Creek Road, the warrant once again identified *1550* Prospect Creek Road as the location to be searched: "Firearms located at 1550 Prospect Creek Road Thompson Falls MT – Inside the residence of James Day DOB:___1968." (*Id.* at 1, 4.)  The warrant permitted the search of "any and all rooms, storage areas, compartments, cabinets, drawers, closets, bathrooms, crawl spaces, attics, to include outbuildings

and the main residence, garages, shops, inside vehicles located at 1550 Prospect

Creek Road Thompson Falls MT." (*Id.*)  The warrant was issued at 5:26 p.m. and

served at 6:15 p.m.  (*Id.* at 5.)  Ultimately, law enforcement recovered over thirty

firearms inside Day's home and a single firearm inside Day's truck, which was

parked by the 1552 residence.

<h1 align="center">ANALYSIS</h1>

The Fourth Amendment protects "[t]he right of the people to be secure in

their persons, houses, papers, and effects, against unreasonable searches and

seizures." U.S. Const. amend IV.  Searches without a warrant are per se

unreasonable unless a warrant exception applies.  *United States v. Wilson*, 13 F.4th

961, 971 (9th Cir. 2021).  To withstand constitutional scrutiny, a warrant must

particularly describe the place to be searched and the things to be seized.  *Groh v.

Ramirez*, 540 U.S. 551, 557 (2004).  The "test for determining the sufficiency of

the warrant description is whether the place to be searched is described with

sufficient particularity to enable the executing officer to locate and identify the

premises with reasonable effort, and whether there is any reasonable probability

that another premise might be mistakenly searched." *United States v. Turner*, 770

F.2d 1508, 1510 (9th Cir. 1985).

Day challenges both the initial discovery of the rifle in the shop as well as

the subsequent search of his home, primarily on the basis that the warrant

erroneously identifies "1550 Prospect Creek Road" as the place to be searched.

Additionally, Day argues that: (1) the warrant executed for the shop did not

describe firearms as the thing to be searched for or seized; (2) there was no

probable cause to believe the rifle in the shop was unlawfully possessed by Day;

(3) the firearms inside 1552 Prospect Creek Road were both discovered and seized

without a warrant; and (4) the Firearms Warrant contained material false

information in violation of *Franks v. Delaware*, 438 U.S. 154 (1978).  The search

of the shop is discussed first below, followed by a discussion of the search of

Day's residence.  Ultimately, both searches comported with the Fourth

Amendment.

**I.      Rifle Found in Shop**

Although Day concedes that the officers were lawfully searching the shop

under the Stolen Truck Warrant when they discovered the rifle, (*see* Doc. 20 at 3),

he argues that the incriminatory nature of the firearm was not immediately

apparent, making its seizure unlawful.  Because "firearms" were not included in

the Stolen Truck Warrant, the rifle's seizure must be supported by a warrant

exception.  *See Groh*, 540 U.S. at 557.

"[I]t is well established that under certain circumstances, the police may

seize evidence in plain view without a warrant."  *Coolidge v. New Hampshire*, 403

U.S. 443, 465 (1971); *see Horton v. California*, 496 U.S. 128, 135 (1990) ("An

example of the applicability of the 'plain view' doctrine is the situation in which the police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character." (Internal quotation marks omitted)). "To satisfy the plain view doctrine: (1) the officer must be lawfully in the place where the seized item was in plain view; (2) the item's incriminating nature was 'immediately apparent;' and (3) the office had 'a lawful right of access to the object itself.'" *United States v. Wong*, 334 F.3d 831, 838 (9th Cir. 2003) (quoting *Horton*, 496 U.S. at 136–37). For the incriminating nature to be immediately apparent, the officer must have probable cause to believe the seized item is contraband or associated with criminal activity. *See Arizona v. Hicks*, 480 U.S. 321, 327–28 (1987) (subjecting plain view exception to probable cause standard).

Day argues that "[t]here is nothing intrinsically illegal about [this] . . . firearm" and "it was not immediately clear to whom the firearm may have belonged; or that Mr. Day had ever possessed it either actually or constructively." (Doc. 20 at 3.) He is wrong on both points. As it relates to the intrinsic nature of the firearm, the Ninth Circuit has consistently held that an officer's knowledge of a suspect's criminal history can make the firearm's incriminating nature immediately apparent. *See United States v. Lemus*, 582 F.3d 958, 964 (9th Cir. 2009) (holding that detective's prior experience with the defendant made the "incriminating nature

12

of the evidence immediately apparent" as the detective "knew that [the defendant] had been convicted of a felony"); *United States v. Maiben*, 133 F.3d 930, *1 (9th Cir. 1998) ("[T]he incriminatory nature of the firearm was apparent to the officer who had been advised of [the defendant]'s criminal history, which included a felony conviction."); *United States v. Rushwam*, 275 F. App'x 684, 686 (9th Cir. 2008) (holding that incriminating nature of firearms found in defendant's residence was immediately apparent because the officer knew the defendant was a convicted felon); *United States v. Brinkerhoff*, 404 F. App'x 147, 149 (9th Cir. 2010) ("Consequently, the gun was incriminating not because of the obliterated serial number, but because it was the suspected property of a known felon."). Here, the officers knew that Day had prior felony convictions and that knowledge was reflected in the Stolen Truck Warrant application. (*See* Doc. 19-1 at 2 ("I am aware that James Day, who goes by 'Jim' or 'Jimmy,' is a convicted felon with prior theft charges, multiple drug related charges, and violent felony charges out of differing jurisdictions including Sanders County.").) Thus, the incriminating nature of the rifle was immediately apparent. *See* 18 U.S.C. § 922(g)(1).

Day's other argument—that officers could not connect him to the rifle—also lacks merit. Although the shop could be commonly controlled by Day's mother, the information the officers learned at the scene was sufficient to support a probable cause finding that the rifle was in Day's possession. When the officers

asked Day's mother for a key to the shop, she said she did not have one and they would have to check with Day. Thus, Day, not his mother, had access to the shop.[2] Moreover, the items in the shop also reflected that Day, and not his elderly, ailing mother, used it. Officers discovered numerous car parts associated with the stolen truck, as well as another partially-dissembled vehicle, a motorcycle, and a recently killed, out-of-season deer head.

Based on the foregoing, Day's motion to suppress the rifle found in the shop is denied.[3]

## II. Firearms Found in Day's Residence

Day further challenges the search of his residence, 1552 Prospect Creek Road. More specifically, Day argues that the search of 1552 was not within the scope of the Stolen Truck Warrant and was not legal under the Firearms Warrant because it (1) was again for the wrong address; (2) was obtained after the search took place; and (3) omitted material facts, including that 1552 was a separate residence, 1552 had already been searched, and 1550 was not searched. Ultimately, because the officers had probable cause to search Day's residence, any

---

[2] In its brief, the government indicates that the officers asked Day how to access the shop and he said that the large, garage door was unlocked. (*See* Doc. 24 at 6.) There is no citation to the record for this conversation.

[3] As noted by the government, Day's argument does not address the discovery of the ammunition in the shop, (*see* Doc. 24 at 17), but the above analysis applies equally to that evidence.

infirmities were immaterial.

### A.    Incorrect Address

Day's primary challenge is that both search warrants incorrectly identified

the property to be searched as "1550 Prospect Creek Road" even though Day's

residence is separately addressed as "1552 Prospect Creek Road."  Accordingly,

Day argues that the search of his 1552 residence ran afoul of the Fourth

Amendment because the warrants failed to identify the location to be searched with

sufficient particularity.  The government disagrees, insisting that a warrant may be

valid for numerous buildings at the same address and that probable cause existed to

search all the buildings located at 1550 Prospect Creek Road, including Day's

residence.  The government has the better argument.

As it relates to Day's particularity argument, the Ninth Circuit has

consistently held that there is not a particularity issue when a warrant description

"enable[s] the executing officer to locate and identify the premises with reasonable

effort, and there is [no] reasonable probability that another premises might be

mistakenly searched." *Turner*, 770 F.2d at 1510 (no violation of the Fourth

Amendment where warrant contained wrong street address for house to be

searched but the description was otherwise sufficiently particular to identify the

premises); *see also United States v. Garza*, 980 F.2d 546, 551–52 (9th Cir. 1992)

(no Fourth Amendment violation where address number did not exist but physical

description was sufficient to locate the correct address). "The necessary specificity of the description will differ as between urban and rural areas and depends heavily on the factual circumstances of each case." *United States v. Williams*, 687 F.2d 290, 293 (9th Cir. 1982). "The practical accuracy rather than the technical precision governs in determining whether a search warrant adequately describes the premises to be searched." *Id.* at 292; *see also Steele v. United States*, 267 U.S. 498, 503 (1925) ("It is enough if the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended.").

Here, there is no dispute that the warrant was sufficient to lead the investigators to the 18-acre parcel located on Prospect Creek Road. As outlined in the Stolen Truck Warrant, officers learned during an unrelated investigation that the stolen truck was taken to the "last house on the right" about 15 miles outside of Thompson Falls after making a "right just before the bridge entering" town. (*See* Doc. 19-1 at 2.) Deputy McCarthy confirmed that was the same location as Day's home, (*see id.*), and Deputy McCarthy further averred that he had actually been to the property the day before, (*id.* at 3), eliminating any risk that the officers would go to the wrong property. *See Garza*, 980 F.2d at 552. Additionally, as argued by the government, the 1550 and 1552 addresses share a physical property description on the state property database. (*See* Docs. 24-1, 24-2, 24-3.)

Day's challenge may more properly be considered one of probable cause. *See United States v. Alexander*, 761 F.2d 1294, 1300–01 (9th Cir. 1985) (explaining that the defendant's challenge to the search of "the whole ranch" was an argument premised on probable cause, not particularity); *United States v. Whitney*, 633 F.2d 902, 907 (9th Cir. 1980) (recharacterizing a "particularity" challenge to a warrant that described a house as a "single family dwelling" instead of as "separate apartments" as a probable cause challenge). In *Alexander*, for example, the defendants challenged a warrant that authorized the search of their entire ranch, not specific parts of it. 761 F.2d at 1300–01. The Ninth Circuit explained that the challenge was not really one of insufficient identification but rather "a challenge based on a lack of probable cause," which required a determination of whether "probable cause existed to search each building, or if all the buildings on the ranch were under common control." *Id.*

Here, however, Day argues that the inquiry is not so simple because neither warrant indicated that there were *two* residences on the property or that the residences had separate addresses. *See United States v. Alcazar-Barajas*, 768 F. App'x 705, 706 (9th Cir. 2019) ("Nothing in the warrant or the warrant affidavit provide[d] any reasonable method for discerning *which* of the two [homes] was the one the magistrate authorized to be searched."). Yet this infirmity is not fatal under the Fourth Amendment. As argued by the government, the Ninth Circuit has

forgiven similar warrant errors, explaining that "[t]o be reasonable under the Fourth Amendment, a search warrant must not be overbroad; its breadth must be limited to the scope of the probable cause on which the warrant was based." *Blight v. City of Manteca*, 944 F.3d 1061, 1066 (9th Cir. 2019). "When a structure contains two residences or two residences share a lot, there must be probable cause to search each." *Id.* More specifically, "a warrant is valid when it authorizes the search of a street address with several dwellings if the defendants are in control of the whole premises, if the dwellings are occupied in common, or if the entire property is suspect." *Id.* at 1066–67 (quoting *Alexander*, 761 F.2d at 1301). At least two of those requirements appear to be met here: Day and his mother own the entire property as tenants in common, (*see* Docs. 24-1, 24-2, 24-3); Mont. Code Ann. § 70–1–306, and, at least in the case of the Stolen Truck Warrant, the warrant provided a basis for searching the entire property for evidence related to that crime.

As emphasized by Day, however, there are inconsistencies. For example, unlike the warrant at issue in *Alexander*, which permitted a search of "all buildings" on a "rural, undeveloped" ranch without "permanent structures," 761 F.2d at 1300–01, both warrants specifically identify a "main residence." The Stolen Truck Warrant permitted the officers to search: "[t]he entire real property listed as 1550 Prospect Creek Road Thompson Falls MT 59873 where a vehicle and/or vehicle parts could be located. *The main residence* including any and all

18

outbuildings where vehicles and/or vehicle parts could be stored." (Doc. 19-1 at 7 (emphasis added).) Likewise, the Firearms Warrant permitted officers to search "[i]n any and all rooms, storage areas, compartments, cabinets, drawers, closets, bathrooms, crawl spaces, attics, to include outbuildings and *the main residence*, garages, shops, inside vehicles located at 1550 Prospect Creek Road Thompson Falls MT." (Doc. 19-2 at 4 (emphasis added).) As made clear at the suppression hearing, the "main residence" in this context referred to the 1550 residence, Day's mother's house. This makes the Firearm Warrant a bit confusing, as it specifically permits a search of "Day's residence" but once again includes the 1550 address and the "main residence" language. The government's attempt to label Day's residence as an "outbuilding" is therefore somewhat inconsistent with the warrant language, at least as it relates to the Firearms Warrant. Additionally, the Firearms Warrant was sought *after* the officers were explicitly told that Day's residence had a different address. Deputy McCarthy testified, however, that the investigators continued to believe that 1550 was the more appropriate, legal address and that it would have been more confusing to begin using 1552 in the second warrant.

Ultimately, while it may have been prudent to include both addresses on the warrants, because they adequately described the property to be searched and there was probable cause to search Day's residence, both warrants were valid despite this issue. Put differently, the officers' actual knowledge of the address

discrepancy did not undermine the legality of the warrants under these facts.

**B.      Timing**

Day's second challenge is that the Firearms Warrant was obtained after his residence had already been searched and the firearms "seized" through the taking of photographs.  As discussed above, the Stolen Truck Warrant, despite its infirmities, provided probable cause to search Day's residence.  Accordingly, the officers were lawfully within Day's residence where the firearms were located in plain view.  *Horton*, 496 U.S. at 135.  Given Day's criminal history, the "seizure" of these firearms was therefore appropriate under the plain view doctrine.

**C.      *Franks* Challenge – Omissions in Firearms Warrant**

Finally, Day argues that the Firearms Warrant ran afoul of the Fourth Amendment because it omitted material facts, including that 1552 was a separate residence, 1552 had already been searched, and 1550 was not searched.  *See Franks v. Delaware*, 438 U.S. 154 (1978).  To prove a violation under *Franks*, a defendant must show by a preponderance of the evidence that (1) the government intentionally or recklessly made false or misleading statements or omissions in its warrant application and (2) these false or misleading statements or omissions were necessary to a finding of probable cause.  *See United States v. Perkins*, 850 F.3d 1109, 1116, 1119 (9th Cir. 2017).  If both requirements are met, "the search warrant must be voided and the fruits of the search excluded."  *Franks*, 438 U.S. at

156.  That is not the case here.

"Under the first step of *Franks*, the defendant must show by a preponderance of the evidence that the affiant knowingly and intelligently, or with reckless disregard for the truth, made false or misleading statements or omissions in support of the warrant application." *Perkins*, 850 F.3d at 1116.  "An officer presenting a search warrant application has a duty to provide, in good faith, all relevant information to the magistrate." *Id.*  "A negligent or innocent mistake does not warrant suppression." *Id.*  "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Illinois v. Gates*, 462 U.S. Here, the warrant application specifically stated that the officers had previously discovered "approximately 25-30 rifles, shotguns and pistols in plain view inside the residence of James Day." (Doc. 19-2 at 2.)  Thus, the application made clear that Day's residence had already been searched.  Day is correct, however, that the warrant did not reference the "1552" address or the fact that the "1550" residence was not searched.  But even if this information was improperly and intentionally omitted, it was not material to the warrant application.

Under the second step of *Franks*, the "key inquiry is whether probable cause remains once the evidence presented to the magistrate judge is supplemented with the challenged omissions." *Perkins*, 850 F.3d at 1119 (internal quotation marks

omitted).  Here, the warrant outlines probable cause to search *Day's* residence, not his mother's; neither the identification of Day's proper address nor the fact that officers did not plan to search his mother's residence undermine that showing.

Based on the foregoing, Day's *Franks* challenge is rejected.

CONCLUSION

According, IT IS ORDERED that the motion to suppress (Doc. 19) is DENIED.

DATED this 6th day of August, 2024.

10:27AM

_____
Donald W. Molloy, District Judge
United States District Court